The next and final case on the call this morning is case number 112-479 consolidated with 112-501 Jane Doe v. John White and the County Unit District No. 5 Board of Directors. Audience ready? You may proceed. Your Honors, I'm Jim Kearns and I'm here with Pete Brandt on behalf of the defendants in this case. Pete represents Dale Heidbreder, one of the administrators, and I represent the remaining defendants along with my colleagues. We asked the court to reverse the 4th District Appellate Court decision finding that there was potential liability for a cause of action in this case. We'd asked the court to reinstate the order of Judge Jones which dismissed the case with prejudice. I intend to cover the issues of the facts alleged in the complaint of the public duty rule and the Tort Immunity Act. If time permits, I'll go on to cover the voluntary undertaking and the viability of a cause of action directly for violation of ANCRA. Pete will address the fraudulent misrepresentation and fraudulent concealment issues and he'll also address whether there's a state created danger cause of action. We're asking the court to find that there are no causes of action of any kind. In order to do that, as you know, you're to consider the facts in the complaint as alleged and state whether they state a cause of action. The 4th District found that there was a cause of action but they based it on a reading of the complaint which was plainly erroneous. The whole thrust of the 4th District's opinion was that we could potentially be liable for creating and sending a letter to Urbana. That is simply not supported by the record. The complaints themselves specifically say that such a letter was created. They nowhere say that it was sent to Urbana. They nowhere say that the Urbana received them and relied on them in any way informing their opinions. Are you disputing that? Yes, oh yes indeed, your honor. Is there any further evidence that it says, well I wanted to ask you if there was any case law or support for the appellate court's finding that further abuse by white was not only but foreseeable but likely? I don't believe there is, your honor, and I'll get to that in a minute, but I wanted to frame the case law for in the complaint before I proceeded in that direction. Thank you. Now when we argue this case in the trial court level, Judge Jones specifically said that one of the reasons he wasn't considering the cause of action here was his finding that the complaint did not allege that this supposed letter of recommendation played any part in the decision to hire John White. He said it on two different occasions. When he did so, the plaintiff's counsel sat silent. They didn't argue with him, they didn't point to anything in the complaint that suggested otherwise, and there isn't anything in the complaint that suggested otherwise. They also didn't suggest that this was an oversight or some sort of inadvertence on their part that they failed to put it in there properly, and they didn't ask to amend the complaint at that point to include such an allegation. So your position is that from a pure pleading standpoint, there's breaks in the causality here? Yes, sir, exactly. And I assume you're asserting that, and even the Seventh Circuit points out the factual distinctions that you've raised, right? Yes, they do, your honor. Now the Seventh Circuit made passing reference to the fact that even if the letter had been received, they didn't see a cause of action. But it's our contention that no such letter was ever received, and it's not alleged that it was. It's important in my judgment that the plaintiffs did ask the trial court leave to file an amended complaint. They wanted to refer to this email from John Pye where he said it was actually worse than he thought. But they made no attempt to ask that the complaint be amended to include an allegation that Urbana received or relied on that letter or that we sent it. That was never in the case. We raised this issue in the appellate court, and we raised it here in our pleadings. At no point have they ever suggested at any time that that letter was sent or received. They've just said, oh, well, that's irrelevant. We've alleged all these other things, so it doesn't really matter. Well, it doesn't really matter. It was the heart of the Fourth District's opinion, and it was mistaken. There is also a reference to a verification of employment form, and that verification of employment form was alleged to have been sent, and it was alleged to have been inaccurate. It misstated the number of days that he worked at Unit 5. But that is hardly the same thing as creating a danger by persuading him to get employed there. It's also important to note, Your Honor, that there's no allegation that that verification of employment letter or form, I should say, was received by Urbana before John White was hired. Now, we've asked the court to take judicial notice of the companion appellate case of Urbana v. Unit 5. In that case, Urbana conceded not only that they did not get this letter, but they also conceded that they didn't receive this verification form until after he'd already been hired. So those are not contradicted by the complaint. They supplement the complaint, and they fill in a couple of blanks that are missing. Departing from that line of analysis, what about this court, should this court, I'm sure what your position is on this, but I'll just ask it in this form, should this court revisit the whole public duty doctrine, your affirmative duty, and create some type of exception for a cause of danger? Your Honor, I think that the public duty rule already has an exception, which encompasses what the Fourth District was talking about. The special duty exception of the public duty rule considers a situation where the public entity creates the danger. But it doesn't waive the application of the general rule for that single reason alone. There are four requirements before the public duty, special duty exception applies. One of those requirements is that the state create the danger. The other one, or the other critical one, is that the plaintiff has to be in the direct and immediate control of the defendant. And here, that is absent. It's not even argued anywhere, because they were students at another school district long after Unit 5 was out of the picture. So I believe that that issue has been addressed by the court decisions addressing the public duty rule. I know we would have to revisit it. But in this case, what about public policy, why wouldn't this court want to create an affirmative duty in a case such as this? An affirmative duty? Well, the cause of the danger. You're saying they didn't receive a letter saying White was okay. How about they should have received a letter saying he isn't okay? Yeah, that comes under the heading of fraudulent concealment, something that Pete's going to address, but I feel pretty sure he'll talk about Iceberg versus Gross, which this court said there's no fraudulent concealment unless you have a special relationship with the plaintiffs. I see no reason to depart from that decision, and if it applies, then that addresses your question, I believe. Is the defendant's failure to report the abuse under the Reporting Act evidence of defendant's willful and wanton conduct? Your Honor, it's certainly alleged that that represents willful and wanton conduct in the pleadings, I agree. But the existence of willful and wanton conduct is not a reason for departing from the public duty rule or not applying the public duty rule. It doesn't create a duty. Allegations of willful and wanton conduct have never been held to create a duty under the public duty rule or a special duty exception. So my answer, I guess, would be that wouldn't matter, even if it did. Now, so what we're looking at here, if you look at the pleadings in total, is a situation where John White is alleged to have been employed by us in April and May for the last time. In August, he gets a job with Urbana without any communications transpiring between us and Urbana. And they call that passing like a hot potato. I think that's just nonsense. The Seventh Circuit addressed that same issue. And I'd like to quote from the decision because I think it's important. This is Doe, too, who was another of the victims of John White in Urbana. In sum, although Doe, too, would have us infer that the defendants actively facilitated the placement of White in her Urbana classroom, the alleged facts do not support that conclusion. And they do not. Now, Your Honor, I want to go on and talk now about the applicability of the Tort Immunity Act. There are other causes of action, but I want to be sure I get this in in my time allotted, so I'd like to address it now. The Tort Immunity Act, the provision of the Tort Immunity Act 2204 states, except as otherwise provided by statute, a public employee, as such, and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person. Clearly, these defendants are alleged to have been acting in the course of the scope of their employment, and just as clearly, it's alleged in the complaint that John White caused the injury. This is facially, on its face, applicable to this case. Now, the Fourth District decided that they were not going to even consider that based on their assumption that Doe versus Calumet was still good law, and that if there was Wilflin-Wanton conduct alleged, the Tort Immunity Act didn't apply. That flies in the face, as I count, of at least five subsequent decisions by this court, most recently the Reese case, which addressed virtually all the issues in this on a parallel provision of the statute. Clearly, Wilflin-Wanton is not an exception. And so then we must look to the statute. The plaintiffs have not even tried to defend the Fourth District's interpretation of that statute. Instead, they've argued essentially the same things that were argued in Reese. They argue that this only applies to respondeat superior liability. Clearly, the statute is broader than that. It talks about the acts of the public employees within the course and scope of their employment, something which is completely irrelevant to the issue of vicarious liability. It talks about the injury being caused by another person, another employee, another person. The statute in multiple places refers to other employees when they mean other employees. Here they said what they meant, and what they meant was any other person. Similarly, they argue, as was argued there, well, they're trying to find us liable for, not for what John White did, but for our own acts. And as the Reese case noted, that's mere semantics designed to avoid the obvious intent of the statute. If you read that, if you read that into the statute, then the only people who would ever be protected by this act would be people who are innocent. So it's clearly not people. It covers the act that people who conduct acts in the course and scope of their employment, and that is these defendants, as alleged here. Finally, they assert that, well, in essence, the legislature couldn't possibly have meant what they said, because that would make it really broad, and these plaintiffs would not recover. Well, they made it very clear what they said, and this court has noted and dismissed in myriad other cases, it's not for you to rewrite the legislature's laws if you think that they could have been written another way or should have been. That's their job. The remedy, if any, would be in the legislature, not here. So for those reasons as well, I believe the tort immunity clearly applies, and even if there were a cause of action in the public duty rule or any of the other matters alleged here, they would be barred by the Tort Immunity Act. I'd also like to talk about the allegation that ANCRA creates a special cause of action. I believe that clearly it doesn't. First, before I get to that, however, I must point out that this is an argument that was waived. Plaintiffs admitted to the trial court that they did not contend that there was such a cause of action and made no appeal on the appellate court to try to create such a cause of action. They come here asking you to accept jurisdiction of this issue, even though it has been waived. Given that the Tort Immunity Act would bar any cause of action anyway, I see no reason for the court to not enforce the waiver that was engaged in by their conduct. But even if you did, the question would be, was there a private cause of action implied by this statute? I think pretty clearly the answer is no. First of all, the statute is silent on this subject. The second consideration in determining whether a statute has an implied cause of action is whether there are remedies provided in this criminal statute which are adequate to secure its enforcement. Clearly they are. Licensed professionals can lose their licenses. People can go to jail. There's no need to add an additional remedy here, and it seems to me clear that the legislature did not intend to do so. Further evidence that the legislature did not intend to do so is the fact that there have been multiple cases in both states and federal courts of Illinois interpreting this statute. Uniformly, every single one of them has said no separate cause of action for violation of ANCRA. Mr. Kearns, your allotted time has expired. May I just complete my thought here? That's fine. Okay. You're taking up your counsel's five minutes. All right. All I would say is the statute's been amended since those decisions. They haven't added that. That means the legislature acknowledges that our interpretation is correct. Thank you. Peter Brandt will now cover the rest of the issues. May it please the Court, Peter Brandt. I'm here on behalf of Defendant Dale Heidbreeder. I wanted to mention and speak on the issue that Mr. Kearns raised earlier that I was going to discuss, two of which I'm going to discuss. But the first is related to the concept of fraudulent misrepresentation. This Court has long held that any claim for fraud must arise out of a commercial transaction case. This is not a commercial transaction case. There's no case law that our opponents have cited that puts this case into a commercial transaction or that makes an exception to that rule. The case of Doe v. Dilling is a case that this Court authored in 2008. And it was a case in which the parents had knowledge of the sons, that the son had contracted AIDS and that the fiancée had filed suit against them. And the claim was that there was a fraudulent misrepresentation, that the parents had not advised the fiancée of this, of the fact that her fiancée had contracted AIDS. So in a case in which there was an allegation of fraudulent misrepresentation outside of the context of a commercial transaction, this Court said absolutely not. There is no basis upon which this allegation can proceed. The plaintiffs in this case had initially filed fraud claims and those claims had been dismissed. They had not been revived at the appellate stage and so are waived. But to the extent that they have tried to reestablish these claims or repackage them, if you will, as a voluntary undertaking, that McLean County had some obligation because they had provided the documentation or allegedly provided some documentation about the days that White had worked there, that that somehow gets around their obligation or the prohibition against proceeding under a fraud theory outside the context of a commercial litigation, the Dilling case makes clear that the tort of misrepresentation applies only to business transactions. The Federal Court, this Court, as Mr. Kearns mentioned, in Doe 2, which is the identical fact situation, identical allegations, the only thing that, identical parties, the only thing that changed was the name of the plaintiff and the plaintiff herself. That Court indicated that under Dilling, those fraud claims are gone. They cannot proceed under those theories. The plaintiff, as I mentioned, did not appeal the decision of the trial court dismissing those and is now, should not be allowed to bring those back forth before this Court. The allegation that there was some sort of voluntary undertaking arose in this Court's case, in the Eisenberg case, and the Eisenberg case is one in which there were two business partners and the plaintiff had indicated to, or had filed a complaint against his partner indicating that he failed to warn, failed to advise him of the proposition that a third party was going to injure him and that he knew that. This Court found clearly under Eisenberg, and Eisenberg has stood for as good law, that there were no facts that could be alleged that there was an intent, there's a responsibility or an intention or that the defendants undertook to protect the plaintiff in that case. And it's identical to what we have here today. There's no voluntary undertaking that by Doe, by Dale Heidbreeder or any of the defendants that we are going to provide some services to Doe 3 and Doe 7. There's no indication that they relied upon Dale Heidbreeder or the other defendants to do anything for them to protect them. There's no allegation or there is no basis for the proposition that the defendants in this case had any contact whatsoever or that the plaintiffs even knew the defendants existed. There's no special relationship and without that special relationship, and what this case hinges on for the plaintiffs is a special relationship having existed. And there's no allegation, they can't make an allegation, because there was no special relationship between the defendants and there was no custody that the defendants had of the plaintiffs at any time. Sixty miles away from McLean County. There was a case that we cited, B.C. v. J.C. Penney Company, which was a First District Appellate Court case that discussed the proposition that where there's an agreement to provide security guards, that this was not a voluntary undertaking to protect the plaintiff. If that's not a voluntary undertaking, clearly providing no information to a school district 60 miles away cannot rise to that level, cannot rise to the level of a voluntary undertaking. The proposition that the defendants fraudulently concealed anything, I think Mr. Kearns made clear that there's no information that's being passed between the two school districts. Mr. Brandt? Yes. Your time has expired. Okay. Thank you very much. Thanks. We would ask this Court to reverse the Fourth District and affirm the trial court's findings. Counsel for the appellee. Good morning, Justices, counsel, co-counsel. My name is Ellen Bullock and I represent Jane Doe III in this important appeal to the Supreme Court of Illinois. I'm here together with Attorney Sean Britton who represents Jane Doe VII. First, I will argue 12 minutes followed by Mr. Britton for eight minutes. He will address the public duty rule and the immunities that are raised on defense. There are multiple ways in which the affirmative bad acts of the McLean School District in passing a known pedophile teacher raised legal issues of first impression in this court. First, the McLean administrators voluntarily undertook duties of care towards Jane Doe's and then willfully and wantonly breached those duties and there is no immunity from liability and the public duty rule does not apply. And second, the Illinois Abused and Neglected Child Reporting Act implies a remedy for its breach. Let me focus for a moment on the factual underpinnings of this case and they are the voluntary undertakings that McLean took in passing John White, a teacher who had sexually harassed students in the McLean classrooms and that was known at the time of the passing and then of course he sexually molested eight girls in Urbana, the first of which was Jane Doe III. These factual undertakings are a series of administrative acts taken by the McLean School District and McLean was glad they took those acts to get White out of the district. Assistant Superintendent John Pye said he was glad. In an email he sent to teacher's representative Julie Bastings and they were glad they got him out of their district to a district only 60 miles away. And they were glad because at the time he was in McLean, they knew he was on a path to further problems. That's again what John Pye congratulates Julie Bastings for knowing at the time they passed him that he was on a path to further problems. The voluntary undertakings that they took to get White out of their district are multiple. They're not one, they're not two, they're multiple. The first one is that they repeatedly violated their Abuse and Neglected Child Reporting Act duties. As Justice Burke mentioned, the ANCRA is for the protection of minors. There's no doubt about what ANCRA's purposes are. And ANCRA requires reporting of suspected abuse, risk of abuse, and child abuse. Under those terms of ANCRA, and they are mandatory, they're not discretionary, there were multiple, and they're laid out in the complaint and alleged in the complaint, there were multiple instances in which these defendants were individually required to report under ANCRA. They're high level school district administrators and they are subject to ANCRA. And they did not report many times the known sexual harassment, teacher on student sexual harassment that was accumulating at their school district. If the legislature had meant for there to be an implied civil cause of action for a violation of ANCRA, why haven't they ever included it? They, I believe there is an implied civil cause of action, but ANCRA was violated as one of the voluntary undertakings regardless of whether we reach the issue of the implied cause of action. I think that as the state Supreme Court of Washington did recently, an implied cause of action can arise in a mandated reporting act when in a situation such as is illustrated here, there are not adequate remedies and for the serious societal issue of teacher on student sexual abuse in education. Our plaintiff would fit the member class. Her injuries are such as the ANCRA statute was intended to protect. And there is no adequate remedy as this case so clearly shows. This is a case of no adequate remedy under ANCRA, I feel, the facts of this case. May I ask you a question about voluntary undertaking? Yes. I assume you would agree with this Court's decision in Iceberg v. Gross that there is no duty requiring one person to protect another from criminal activity by a third person's absent a special relationship. The Fourth District found additionally that there is no special relationship between McLean County administrators and the students in the Urbana School District. And would you agree with that proposition? Well, I've always argued there could be a special relationship and that direct and immediate control can be met because of the voluntary undertakings, the nature of knowing they were sending this guy to Urbana. They brought in duties to the Urbana girls as the next in line. But I think also voluntary undertaking. May I ask you a question with the voluntary undertaking? That's your next step. Basically your theory here is that McLean didn't do enough to protect these girls, right? My theory is that McLean took affirmative bad acts separate from John White's criminal acts that was caused and made it foreseeable and likely that these girls would be the next ones. Is that what a voluntary undertaking is, though? The restatement says one who undertakes to render services to another which he should recognize as necessary for the protection of a third party is subject to liability to the third party for physical harm resulting from his failure to exercise reasonable care to protect his undertaking. So my question is, what is it that you're saying that McLean did, undertook to protect the children in the Urbana school district? What activities did they do, you know, voluntarily did to protect the students? Is that what a voluntary undertaking is? The most illustrative of several or the most important is the Urbana Verification of Form. And let me quickly explain what exactly that is. That maybe gets lost in the shuffle, but it's an important voluntary undertaking. The Urbana Verification of Employment Form was an employment form that has Urbana verification on the top of it, so it was definitely going to Urbana. It also went to the State of Illinois State Board of Education. It went two places. But it was a form. And what they had done, McLean had done in the school year preceding their release on extended leaves because of his teacher on student sexual misconduct in their classrooms. First, in October of 2004, they took him from the classroom for 10 days, removed him, and then returned him for viewing pornography on his classroom computer. Then after that return to the classroom, they continued to accumulate parental complaints of teacher on student touching. And so then in approximately April, they took him out for another 20, 25 days, I'm not sure when the school year ended. So they had him out of the classroom for approximately 30, 35 days. During the second removal from the classroom, which was through the end of the year, that was when they actually took the steps to pass him. So they took him out of their classroom as a danger to their students in their school district, and then made the arrangements to pass him, including the Urbana verification form, which they falsified and said they hadn't been taken out of the classroom, he had taught all year. That is an affirmative misrepresentation and a fraudulent one, and it is a voluntary undertaking. But how does that, the sending of that letter, how is that undertaking to protect the children? Isn't that what a voluntary undertaking has to be? One who undertakes to render services to another, which he should recognize as necessary for the protection of the third person. How did the sending of that letter, how was that to protect the children in Urbana? Well, I agree with the fourth district that it was a voluntary undertaking, as was the violation of ANCRA, and both were for the protection of exactly these children, the Jane Does. If you're going to lie about employment of your employees so that he can get another job, the people you're voluntarily undertaking at that point are the students at the other job. If you're going to refuse to do your mandated reporting duties, even though you know exactly what they are, the people that are going to bear the risk are the children at the next school district. And I agree with the fourth district that the voluntary undertaking is seen in that way. Another issue that the fourth district... Are you saying that they have a special relationship because of the custodial protegee relationship, and that as a result of having that relationship, they didn't, by omission, give that information out? Is that part of it? I'm not sure how you're... Yes, I would say they have a special relationship because they're school children, they're minors, they're in the next district, and they're sort of making it personal to those children by passing on the dangerous pedophile to their district. And that's where the direct immediate control issue of the special relationship, I think, is met when they sort of say he's going to Urbana. Would we be the first court to recognize an action of passing? I created that word, so I think that that would be... I took that word out of other literature, not legal literature. So I think that would be right if you said it that way. But I think it's a problem, a societal problem. Let me make clear that passing is a word to express a problem. This court said in People v. Huddleston, and I think it's important right here in this analysis, that the injuries that a child bears in teacher-on-student sexual abuse, and that's the injuries we're talking about, are society's problems. Because these children suffer lifelong educational, emotional, psychological, and physical problems, those become society's problems. And that's this court's in Huddleston. So yes, this problem we could take on the issue of passing, it's very widespread. I think often school districts pass them farther away, but it doesn't really matter how far they pass them. It's what they do to get rid of somebody who they don't want to create more problems in their classroom. So what obligation does the school have? Can you articulate that for us? Because I still am really concerned with what you say is the ultimate duty of the school district. How do you describe what the duty is of McLean County to the children in the other school? Well, not to violate ANCRA, because that then creates a danger that wouldn't have had to be there. You could do your reporting duties under ANCRA, and then you would have no problems, liability problems at all, whatsoever. If as a school district you picked up the phone and called DCFS as you're mandated to do under Illinois law. So that would create a duty in my mind of notification or of reporting duty. But also I think there's just duty is a public interest and public policy issue at Bedrock. And as the fourth district noted, when the state creates the danger, I took the interest in the fourth district language not because necessarily the United States Constitution's substantive due process would apply right here, but because the state creates the danger, then there's a duty. That is what makes this different from respondeat superior or vicarious liability. If they create, if they make John White into, if they pass him, they take him, and they did, and make special arrangements with him to make him look good on paper so he can get a job in Urbana, and they help with his Urbana forms, and they get him out of there, they take him out of their classroom, they don't want him in there, but they pass him on to the Urbana classroom. Aren't you really arguing then that because of the societal concerns that this court should write in an exception to the public duty rule? I would be, I would think that's a good idea. Because you started out by saying the public duty rule doesn't apply. Well, and the fourth district found it didn't apply, and I would agree with that, but I would say this court can write into an exception into the public duty rule, absolutely this court can. This court is the arbiter of the common law of Illinois, and the public duty rule is part of the common law of Illinois. And this is a case of first impression. Your time has expired. Thank you. And John, since the questions took her into the time, don't deduct that from the co-counsel. Good morning. May it please the court, my name is Sean Britton. I represent Jane Doe 7, Julie Doe 7. I'm here, obviously, with my co-counsel, Ellen Bullock. The public duty rule, the fourth district did find that the public duty rule did not apply to this set of circumstances. And the reason for that was because the fourth district felt that you needed to place the emphasis not on the context of the public duty rule, but on the conduct that was engaged in. As Ms. Bullock discussed, the McLean School District voluntarily undertook to assist John White in his employment. And in an attempt to address the question that you raised, Justice, I think that the notion of voluntary undertaking should not be so narrowly read as to only apply to circumstances where the voluntary undertaking is for protection itself. I think the voluntary undertaking rule, when read in context with the other rules of the restatement, and the fourth district made reference to this in their opinion, I think the voluntary undertaking rule forbids someone from taking affirmative acts to create a danger, such as the circumstance here, that then results in harm to another. Here, the McLean School District created the danger complained of by taking affirmative steps to falsely report John White's record to the state, not mentioning the 35 days that he was suspended from his teaching practice. Reference was made on argument that, well, Mr. White was hired by Urbana Schools before Urbana Schools probably even had a chance to review that verification form. I don't know. That's a question of fact. We are here on a motion to dismiss. But even setting that aside, even if he was, presumably Urbana would have terminated him, or at least made inquiry into the fact as to why it was he was suspended for 35 days had they received an accurate form. But they didn't. They got from McLean this nice, clean-looking record. The letter of recommendation was written by McLean Public Schools as well that gives John White this glowing letter of recommendation. A severance agreement was reached between the Teachers Union and McLean Public Schools in order to make Mr. White's record look fine. And that's what passing is. It's an effort to take a teacher who has problems, who has issues, get them out of your school district, get them off into another school district. God protect those children. I made reference, I made an analogy at the lower court, and I'm going to try to struggle through it here, but this is not the circumstance where a bomb squad fails to adequately cordon off a bomb and protect members of the public. This is a circumstance where the school puts it in a package and mails it to another municipality and says we don't know what's in that package to that municipality on inquiry. This is an affirmative step. It's a state-created danger. It's an effort to actually push off a problem to another school system. And that's what we're complaining about. We're not complaining about a failure to protect here. We're complaining about actual steps taken by McLean Public Schools to pass on this predator, a person that they should have known was a predator. On the issue of governmental immunity, Section 112204 does immunize an employee from liability for injury caused by an act or omission of another employee or another person. Now, historically in the case law, I think in our pleadings we cited the Island case, the Means case, historically that provision, when it has been applied, has been applied to circumstances of vicarious liability. Defendants say look at the Reese case and use the Reese case as an analogy when you're considering Section 2204. And the reason why they say use it as an analogy when you're considering Section 2204 is that the Reese case didn't consider 2204. The Reese case considered 4-106 sub B, which was a specific immunity under the Tort Immunity Act that specifically dealt with the circumstance where an escaping prisoner causes harm. In the Reese case, the court ruled that the language of that statute meant it applied both to the conduct of the prisoner who caused the injury and the conduct of the police in attempting to apprehend that prisoner. The plaintiffs in that case tried to limit it just to the conduct of the prisoner, tried not to address the conduct of the police, tried to get that away from immunity. The court said no, no, we're going to consider both conducts. Defendants would like this court to apply that same reckoning to Section 2204. And their argument is if the legislature had meant Section 2204 to apply only to vicarious liability, then why didn't they say that? Why didn't they just say, well, it only applies to vicarious liability? The other side of that argument, the flip side of that coin is that if you apply Section 2204 as broadly as the defendants would have you apply it, then the conduct in Reese, the 4106 sub B conduct, would also be immunized by Section 2204. In other words, if you do what the defendants would like you to do with Reese and expand 2204 to apply to the conduct that's here, that broad expansion would actually serve to cause 4106 sub B and I imagine a number of other provisions of the Tort Immunity Act to be redundant. Now, I don't think the legislature would have spent the time drafting those other sections of the Tort Immunity Act if they meant to render all those sections redundant through a broad reading of 112204. And I don't think that 112204 should be read so broad as to apply to the conduct here, neither does the 4th District. And I want to say too, while the 4th District mentioned the Doe v. Calumet City case, the 4th District also made a point of saying that it is the burden of the defendants to articulate specifically that provision of the Tort Immunity Act which is supposed to be applying to this conduct here. And the 4th District found that they had not specifically articulated that section of the Tort Immunity Act. That's all I had. Are there any questions from this panel in the remaining time that I have? Thank you, Mr. Goodman. Thank you, Justice. Your Honor, the plaintiffs have continued to refer to this as passing by us to Unit 5, or to Urbana, despite the fact they don't articulate an argument and they haven't articulated in their complaint any contact between Urbana and Unit 5 before he was hired. Clearly, the term passing is not articulated as exactly what the requirements would be, but certainly there has to be a requirement, as read in the Doe case and others. Were there letters of recommendation? They were not sent. They were not received. They were drafted. That's the only thing that's in there, that they were drafted. And Judge Jones specifically... That was in our file. That was never sent to them. Nothing was ever sent except a single form. All these documents that we supposedly used to pass this guy are in our file. You mean Urbana never contacted you? Exactly right. That's exactly right. They did not do due diligence to when they were hired. In fact, if you look at the complaint, the allegations against Urbana are just exactly that. You hired this guy without doing any kind of a check on him at all. And the allegations, the admissions by Urbana in a companion case, which you can take judicial notice of, are that we did not do anything at all. We didn't contact them. We didn't ask about them. We didn't get the letter. What about the verification letter? The verification letter came in after he was already hired. It did come in. But you did receive something, or they did ask for something? They did that after they hired him, right. And what was on the verification letter? A statement that he had worked 180 days the previous year. Was that true? No, it was not true. It was 145 days. But that again is the misrepresentation that's been covered by this court in Dover v. Dilling, and it doesn't create a separate cause of action. That's the only communication they had, and as I say, the passing, if you're going to accept that, the passing has to say, okay, not only do you have a duty, the passing encompasses getting him fired after they've already hired him by sending him information. It can't conceivably be such a duty. Do you have knowledge about sex abuse? You don't think there's a duty or responsibility to warn another employer that an employee has bad conduct? Your Honor, they were not asked, of course, and this court has noted multiple times there's no duty from one employer to another to warn anything about an employee, and it's particularly true in Iceberg where there's no relationship. There's no duty to disclose. And it doesn't still get around the Tort Immunity Act. Well, Mr. Kearns, let's back up to that form again. That form also requires that you indicate the number of days taught during that time frame. Is that right? That's correct, Your Honor. And so the form that lists 180 days of school days taught, that was inaccurate. That's correct, Your Honor. But it also requests that you also disclose the percentage of each day employed, and that indicates 100 percent. Right. I assume that means if he's a part-time teacher as opposed to a full-time teacher. He was a full-time teacher. And based on the record, what was the date of employment? I don't remember specifically, but he worked there three years. But it was in August? That's what I understand. At Urbana? Yes. Not at your place. Right. August. Yes, Your Honor. And I don't know where this comes from. I know this was in the sealed documents, but it's referred to as Exhibit A, and it says received August 29, 2005. He was employed August, I can't remember if it's the 12th or the 15th. And I don't know whose received stamp date that is. That's Urbana's. Pardon me? It's Urbana's. Yeah. But if the form that Justice Burke asked about had been completed accurately, even if he had, I don't know what day the school day started that year, but is it not reasonable to say, hey, now we've got this form, we want more information about why he wasn't employed full-time? That's certainly a reasonable inference, Your Honor, that I've got about it. Is this required by state law as well? No, I'm not sure, Your Honor. It is a form that's submitted to the state, as Ms. Bullock said, and it's requested by Urbana. I mean, your school district does the same thing when they hire people. I'm certain that's true. And it looks like Section A is the employee, the teacher, and Section B is the district where they last worked. Or maybe they submitted for more than one school district if they've been employed several places. I don't know. I think that each district only refers to its own employment. Thank you. Thank you, Your Honor. And I just briefly, on the Tort Immunity Act, the statute says, except as otherwise provided by law, there are a number of provisions of the statute which provide for liability for police officers, as I'm sure you know. The exception that Mr. Britton referred to takes some of those provisions out of play as to policemen. There is no otherwise provision by law that would apply to the McLean County employees, and so that statute applies to them. It does not make other provisions immunity, such as the Escape Prisoner Act unnecessary. For the reasons given, Your Honor, one more thing I'd like to say is she's not left without a remedy. They got a remedy. They got it from Urbana, the party that was responsible for John White when he committed the torts. It's just not the case to say there's no remedy. Thank you, Your Honor. To all four members of the Council who argued today, thank you very much. Case number 112-479 consolidated with 112-501. Jane Doe 3 v. John White in the McLean County Unit District No. 5 is taken under advisement as Agenda No. 7. This concludes our oral argument docket for January 2012. Mr. Marshall, the Illinois Supreme Court stands in adjournment.